IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS T. ESPADA SANTIAGO<br><br>Plaintiff<br><br>v.<br><br>HOSPITAL EPISCOPAL SAN LUCAS, et. al;<br><br>Defendant | CIVIL NO.: 07-2221 (ADC/MEL) |

**REPORT AND RECOMMENDATION**

**I.   PROCEDURAL BACKGROUND**

On December 21, 2007, plaintiff, the son of Myriam Santiago Roche ("Santiago-Roche"), brought the present action alleging claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (2000), and medical malpractice claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN., tit. 31, §§ 5141, 5142, against: (1) Hospital Episcopal San Lucas ("San Lucas") and its insurance company; (2) Dr. Luis Hernández Ortiz ("Dr. Hernández"), his insurance company, his spouse, and their conjugal partnership; (3) the Puerto Rico Emergency Group ("PREG") and its insurance company; (4) Dr. Marcos Godoy ("Dr. Godoy"), his insurance company, his spouse, and their conjugal partnership; and (5) Caribbean Emergency Physicians, P.S.C. ("CEP") and its insurance company. (Docket 1.)

On April 14, 2008, San Lucas filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that plaintiff made no factual allegations in the complaint sufficient to maintain an action under EMTALA. (Document 12 at 12.) On April 30, 2008, plaintiff filed an opposition to San Lucas's motion to dismiss. (Document 13.)

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

## II.   FACTUAL ALLEGATIONS IN THE COMPLAINT

On December 24, 2006 Santiago-Roche sought treatment at San Lucas's emergency room, complaining of abdominal pain and "vomits." (Document 1 ¶ 17.) San Lucas was "at all relevant times a private medical institution with facilities in Ponce, Puerto Rico, and a participating hospital with an emergency department as defined and regulated by EMTALA." (Document 1 ¶ 4.) A San Lucas nurse performed triage on Santiago-Roche before Dr. Hernández's evaluation. (Document 1 ¶ 17.) Dr. Hernández "conducted a physical examination, ordered a CBC, as well as other tests." Id. According to emergency room records, Dr. Hernández "reached a diagnostic impression of colelithiasis and discharged [Santiago-Roche] at 12:20 PM." Id. An X-ray was "suggestive for pneumonia" and an ultrasound was "suggestive for colelithiasis." Id. Santiago-Roche "was a diabetic" and had a "previous history of cancer" which compromised her immune system. Id. Despite Santiago-Roche's "previous medical history and clinical condition at the time, she was discharged in an alleged stable condition." Id.

On December 28, 2006, Santiago-Roche went to Pila's emergency room, claiming abdominal pain, diarrhea, and cough. Id. at ¶ 18.  Dr. Godoy performed a physical evaluation and ordered several tests. Id. Dr. Godoy "reached a diagnostic impression of abdominal pain, moderate dehydration and gastroenteritis." A sonogram "was positive for colelitiasis" and a CT scan "was positive for massive bladder." Id. Dr. Godoy requested a consultation from Dr. Martínez Ajá, who diagnosed Santiago-Roche with acute colesystitis and recommended that Santiago-Roche be admitted to Pila. Dr. Martínez started Santiago-Roche on antibiotics and transferred her to the care of Dr. Irizarry Pabón. Id.

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

At 11:55 A.M. on December 29, 2006, Dr. Víctor Carlo ("Dr. Carlo") conducted a physical examination of Santiago-Roche and reviewed the tests performed on her. Id. at ¶ 19. Dr. Carlo diagnosed Santiago-Roche with "colelithyasis, colecystitis, interstical pneumonia and sepsis of peritoneal origin." Id. Dr. Carlo further "suspected a cerebrovascular accident." Dr. Carlo recommended antibiotics and a consultation from a neumologist and a neurologist, to ascertain whether Santiago-Roche's mental changes were due to sepsis or a cerebrovascular accident. Santiago-Roche died as a result of her physical and mental conditions at 7:40 P.M. on December 30, 2006.

### III. LEGAL ANALYSIS

**A. Fed. R. Civ. P. 12(b)(6) Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . ." Id. An evaluation of a motion to dismiss under Rule 12(b)(6) requires the court to "accept as true all well-pleaded factual averments and indulg[e] all reasonable inferences in plaintiff's favor. Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). Dismissal under Rule 12(b)(6) is appropriate if the facts alleged, taken as true, do not warrant recovery. Aulson, 83 F.3d at 3.

In order to survive a motion to dismiss, plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

The Supreme Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007)(quoting Twombly, 127 S.Ct. at 1967). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Torres v. Bella Vista Hosp., Inc., 523 F.Supp.2d 123, 133 (D.P.R. 2007), quoting Twombly, 127 S.Ct. at 1965 (citation omitted); see also Benitez-Rodriguez v. Hospital Pavia Hato Rey, Inc., No. 08-1630, 2008 WL 5132547 at *1 (D.P.R. 2008) (applying Twombly to an EMTALA claim).

**B. EMTALA**

**1. EMTALA Standard**

EMTALA prevents hospitals covered by the statute from refusing treatment to any person with an emergency medical condition.[1] See Del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15,

---

[1] "A plaintiff suing under EMTALA must show, as a threshold matter, that 'the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility).'" Feliciano Rivera v. Medical & Geriatric Administrative Servs., Inc., 254 F. Supp. 2d 237, 240 (D.P.R. 2003) (citing Correa v. Hosp. San Francisco, 69 F.3d 1184, 1190 (1st Cir. 1995). A participating hospital is a hospital "that has entered in to a service agreement with Medicare." Id. (citing 42 U.S.C. § 1395dd(e)(2) (2000); Jackson v. East Bay Hosp., 246 F.3d 1248, 1260 n. 6 (9th Cir. 2001); Medero Diaz v. Grupo de Empresas de Salud, 112 F. Supp. 2d 222, 225 (D.P.R. 2000)).

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

19 (1st Cir. 2002.) Specifically, EMTALA imposes two requirements on a "participating hospital" when a person seeks treatment at its emergency room: (1) the hospital "must provide for an appropriate medical screening examination within the capability" of the hospital to determine whether an emergency medical condition exists; and (2) if the medical screening reveals an emergency medical condition, the hospital must stabilize the person before the patient is transferred or discharged. 42 U.S.C. § 1395dd(a)-(b); Del Carmen Guadalupe, 299 F.3d at 19; Correa v. Hosp. San Francisco, 69 F.3d 1184, 1190 (1st Cir. 1995).

To assert a claim under EMTALA, a plaintiff must establish that: "(1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient ... [has come to] the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition." Correa, 69 F.3d at 1190 (citing Miller v. Med. Ctr. of S.W. La., 22 F.3d 626, 628 (5th Cir. 1994); Stevison v. Enid Health Sys., Inc., 920 F.2d 710, 712 (10th Cir. 1990)).[2]

An "appropriate screening" can be divided into a substantive requirement and a procedural requirement. Alvarez-Torres v. Ryder Memorial Hosp., Inc., 576 F. Supp. 2d 278, 283 (D.P.R. 2008)

---

[2] Although Correa uses the phrase "arrived at" when referring to the requirement that the patient "has come to" the facility seeking treatment, the First Circuit has held that in some circumstances a patient en route to a hospital may satisfy the "has come to" requirement of the statute, at least until the Secretary of Health and Human Services chooses to interpret said statutory provision otherwise. Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia, 524 F.3d 54, 60-62 (1st Cir. 2008).

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

(citing Del Carmen Guadalupe, 299 F.3d at 19). Substantively, the issue is "whether the procedures followed in the emergency room, even if they resulted in a misdiagnosis, were reasonably calculated to identify the patient's critical medical condition." Del Carmen Guadalupe, 299 F.3d at 21. Procedurally, the issue is whether the hospital provided the same screening to the plaintiff that it would provide to any other patient. Id. at 22. EMTALA is not a federal action for medical malpractice. Id. at 21. "[F]aulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." Correa, 69 F.3d at 1192-93 (citing Brooks v. Maryland Gen. Hosp., 996 F.2d 708, 711 (4th Cir. 1993)). "'A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints.'" Del Carmen Guadalupe, 299 F.3d at 20 (quoting Correa, 69 F.3d at 1192).

"If...the hospital determines that the individual has an emergency medical condition," the hospital must "stabilize the medical condition." 42 U.S.C. § 1395dd(b)(1)(A). An "emergency medical condition" manifests "itself by acute symptoms of sufficient severity...such that the absence of immediate medical attention could reasonably be expected to result in...(i) placing the health of the individual...in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1). To stabilize the emergency medical condition, a hospital must "provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the

6

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

condition is likely to result from or occur during the transfer of the individual from a facility." See 42 U.S.C. § 1395dd(e)(3)(B); Alvarez-Torres, 576 F. Supp. 2d at 284.

**2. San Lucas's Motion to Dismiss for Failure to State EMTALA Claim**

San Lucas argues that the complaint does not contain any factual allegations sufficient to state a claim under either the "appropriate screening" requirement or the "stabilization"requirement of EMTALA. With regard to San Lucas's screening and treatment of Santiago-Roche, the complaint states:

> On December 24, 2006, [Santiago-Roche] visited [San Lucas] Emergency Room, suffering of abdominal pain and vomits. [Santiago-Roche] underwent a triage by a [San Lucas] nurse, after which Dr. Hernández evaluated her. Dr. Hernández conducted a physical examination, ordered a CBC, as well as other tests. Per the emergency room medical record, Dr. Hernández reached a diagnostic impression of colelithiasis and discharged [Santiago-Roche] at 12:20 P.M. The X-ray report was suggestive for pneumonia, the ultrasound report was suggestive for colelithiasis. [Santiago-Roche] was a diabetic, with a previous history of cancer, conditions which compromises her inmune [sic] system. Disregarding [Santiago-Roche's] previous medical history and clinical condition at the time, she was discharged in an alleged stable condition.

(Document 1 ¶ 17.)

The only other allegations in the complaint addressing EMTALA claims echo the language of the statute. (See Document 1 ¶ 20.) There is scant language regarding disparate screening or a screening that is not "reasonably calculated to identify the patient's critical medical condition." See Del Carmen Guadalupe, 299 F.3d at 21. Plaintiff does allege that "Dr. Hernández failed to properly evaluate [Santiago-Roche's] medical condition and symptoms, did not conduct available standard medical exams to diagnose and treat her and also failed to consult with any specialist." These

7

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

allegations, however, sound in medical malpractice rather than EMTALA, given that under EMTALA "faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." Correa, 69 F.3d at 1192-92 (citing Brooks, 996 F.2d at 711).[3]

As to the "stabilization" component there are sufficient factual allegations to survive a motion to dismiss. The complaint alleges that Dr. Hernández diagnosed Santiago-Roche with a condition after a medical screening, Santiago-Roche had a previous medical history that weakened her immune system, and that Dr. Hernández discharged her in an "alleged" stable condition "disregarding her medical history and clinical condition at the time." (Document 1 ¶ 17.) Taken together, these factual allegations create the reasonable inference that Santiago-Roche may have had an "emergency medical condition" under the statute and was discharged in an unstable condition following inadequate stabilizing treatment from San Lucas. Furthermore, San Lucas does not dispute that it is a "participating hospital" or that Santiago-Roche came to its emergency room seeking treatment. Therefore, plaintiff has made factual allegations regarding a stabilization claim under EMTALA sufficient to create a plausible entitlement to relief. See Correa, 69 F.3d at 1190.

**C. State Law Claims**

Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367 for his state law

---

[3]Arguably, perhaps the allegation that San Lucas failed to conduct "available standard medical exams to diagnose" addresses the substantive component of an appropriate medical screening under EMTALA, that is the duty to provide "for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients." Millán v. Hosp. San Pablo, 389 F.Supp.2d 224, 231-232 (D.P.R. 2005) (citations omitted). This issue, however, needs not to be addressed at this moment and may be revisited in the context of a summary judgment motion.

Espada Santiago v. Hospital Episcopal San Lucas, et. al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

medical malpractice claims. Because plaintiff's federal claims survive San Lucas's motion to dismiss, it is recommended that at this stage of the proceedings, the motion to dismiss as to plaintiff's medical malpractice claims against San Lucas under Articles 1802 and 1803 of the Puerto Rico Civil Code be DENIED.

### IV.    CONCLUSION

For the reasons explained above, it is recommended that San Lucas's motion to dismiss (Docket No. 12) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6-7 (1st Cir.1986).

In San Juan, Puerto Rico, this 10th day of February, 2009.

                                          s/Marcos E. López
                                          U.S. MAGISTRATE JUDGE