IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS T. ESPADA SANTIAGO<br><br>Plaintiff<br><br>v.<br><br>HOSPITAL EPISCOPAL SAN LUCAS, et. al;<br><br>Defendant | CIVIL NO.: 07-2221 (ADC/MEL) |

**REPORT AND RECOMMENDATION**

**I.    PROCEDURAL BACKGROUND**

On December 21, 2007, plaintiff, the son of Myriam Santiago Roche ("Santiago-Roche"), brought the present action alleging claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (2000), and medical malpractice claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN., tit. 31, §§ 5141, 5142, against: (1) Hospital Episcopal San Lucas ("San Lucas") and its insurance company; (2) Dr. Luis Hernández Ortiz ("Dr. Hernández"), his insurance company, his spouse, and their conjugal partnership; (3) the Puerto Rico Emergency Group ("PREG") and its insurance company; (4) Dr. Marcos Godoy ("Dr. Godoy"), his insurance company, his spouse, and their conjugal partnership; and (5) Caribbean Emergency Physicians, P.S.C. ("CEP") and its insurance company. (Docket 1.)

On May 12, 2008, CEP filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that untimely service was made, CEP is not an entity subject to liability under EMTALA, CEP is not vicariously liable for any medical malpractice claim, and attorney's fees should be assessed against plaintiff. (Document 14 at 4-8.) CEP's motion to dismiss has been deemed unopposed. (Docket No. 25.) On June 3, 2008, Dr. Godoy and the conjugal partnership constituted by himself and his spouse

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that untimely service was not made and supplemental jurisdiction for any claims against him or the conjugal partnership should not be exercised under 28 U.S.C. § 1367 (2000) (Docket 21.)[1] Plaintiff filed an opposition to Dr. Godoy's motion to dismiss on June 30, 2008. (Document 39.) Both motions to dismiss are addressed in this report and recommendation.

## II.  FACTUAL ALLEGATIONS IN THE COMPLAINT

On December 24, 2006 Santiago-Roche sought treatment at San Lucas's emergency room, complaining of abdominal pain and "vomits." (Document 1 ¶ 17.) San Lucas was "at all relevant times a private medical institution with facilities in Ponce, Puerto Rico, and a participating hospital with an emergency department as defined and regulated by EMTALA." (Document 1 ¶ 4.) A San Lucas nurse performed triage on Santiago-Roche before Dr. Hernández's evaluation. (Document 1 ¶ 17.) Dr. Hernández "conducted a physical examination, ordered a CBC, as well as other tests." Id. According to emergency room records, Dr. Hernández "reached a diagnostic impression of colelithiasis and discharged [Santiago-Roche] at 12:20 PM." Id. An X-ray was "suggestive for pneumonia" and an ultrasound was "suggestive for colelithiasis." Id. Santiago-Roche "was a diabetic" and had a "previous history of cancer" which compromised her immune system. Id. Despite Santiago-Roche's "previous medical history and clinical condition at the time, she was discharged

---

[1] As a challenge to subject matter jurisdiction over the claims against Dr. Godoy, this motion would be properly brought under Fed. R. Civ. P. 12(b)(1). Pursuant to Fed. R. Civ. P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "As courts of limited jurisdiction, federal courts have the duty to construe their jurisdictional grants narrowly." Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (citing Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998)). Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F. 3d 520, 522 (1st Cir. 1995) cert. denied, 515 U.S. 1144 (1995); Droz-Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217 (D.P.R. 2003).

2

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

in an alleged stable condition." Id.

On December 28, 2006, Santiago-Roche went to Hospital Dr. Pila's emergency room, claiming abdominal pain, diarrhea, and cough. Id. at ¶ 18. Hospital Dr. Pila contracted with CEP to operate its emergency room.[2] Id. at ¶ 14. Dr. Godoy, a physician employed or supervised by CEP, performed a physical evaluation and ordered several tests. Id. at ¶¶ 14, 18. Dr. Godoy "reached a diagnostic impression of abdominal pain, moderate dehydration and gastroenteritis." A sonogram "was positive for colelitiasis" and a CT scan "was positive for massive bladder." Id. Dr. Godoy requested a consultation from Dr. Martínez Ajá, who diagnosed Santiago-Roche with acute colesystitis and recommended that Santiago-Roche be admitted to Hospital Dr. Pila. Dr. Martínez started Santiago-Roche on antibiotics and transferred her to the care of Dr. Irizarry Pabón. Id.

At 11:55 A.M. on December 29, 2006, Dr. Víctor Carlo ("Dr. Carlo") conducted a physical examination of Santiago-Roche and reviewed the tests performed on her. Id. at ¶ 19. Dr. Carlo diagnosed Santiago-Roche with "colelithyasis, colecystitis, interstical pneumonia and sepsis of peritoneal origin." Id. Dr. Carlo further "suspected a cerebrovascular accident." Dr. Carlo recommended antibiotics and a consultation from a neumologist and a neurologist, to ascertain whether Santiago-Roche's mental changes were due to sepsis or a cerebrovascular accident. Santiago-Roche died as a result of her physical and mental conditions at 7:40 P.M. on December 30, 2006.

---

[2] Hospital Dr. Pila is not a defendant in this case.

3

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

### III.   LEGAL ANALYSIS

**A. Fed. R. Civ. P. 12(b)(6) Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . ." Id. An evaluation of a motion to dismiss under Rule 12(b)(6) requires the court to "accept as true all well-pleaded factual averments and indulg[e] all reasonable inferences in plaintiff's favor. Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). Dismissal under Rule 12(b)(6) is appropriate if the facts alleged, taken as true, do not warrant recovery. Aulson, 83 F.3d at 3.

In order to survive a motion to dismiss, plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

The Supreme Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007)(quoting Twombly, 127 S.Ct. at 1967). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'

4

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Torres v. Bella Vista Hosp., Inc., 523 F.Supp.2d 123, 133 (D.P.R. 2007), quoting Twombly, 127 S.Ct. at 1965 (citation omitted); see also Benitez-Rodriguez v. Hospital Pavia Hato Rey, Inc., No. 08-1630, 2008 WL 5132547 at *1 (D.P.R. 2008) (applying Twombly to an EMTALA claim).

**B. Untimely Service**

Both Dr. Godoy and CEP move to dismiss on the basis of improper service of process because both co-defendants were served outside of the 120 day term for service of process outlined in Fed. R. Civ. P. 4(m). The motion to dismiss on the basis of improper service of process should be denied because the Court expressly granted plaintiff until May 24, 2008 to serve process on defendants. (Docket No. 2.) Dr. Godoy was served on April 28, 2008 and CEP was served on May 6, 2008. (Document 14 at 1; Document 21 ¶ 2.) Therefore, service was made within the time limit established by the Court.

**C. EMTALA Claims**[3]

CEP argues that it is not an entity which can be subjected to liability under EMTALA. "A plaintiff suing under EMTALA must show, as a threshold matter, that 'the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment

---

[3] Even though it is unclear whether plaintiff is presenting EMTALA claims against CEP and Dr. Godoy, we note that the complaint alleges that "[b]oth Jane Roe and the Conjugal Partnershhip formed by her and Dr. Godoy are jointly and severally liable and responsible to plaintiff for acts or omissions contrary to the mandate of EMTALA...." (Docket 1 at ¶13.) Furthermore, although paragraphs 26-27 of the complaint regarding Dr. Godoy and CEP explicitly refer to Articles 1802 and 1803 of the Puerto Rico Civil Code, said paragraphs have been placed in the complaint under the subtitle of "EMTALA Violations". (Docket 1 at 9-11). Hence, despite the ambiguity of the complaint, for purposes of this report the same will be interpreted as presenting EMTALA claims against Dr. Godoy and CEP.

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

facility).'" Feliciano Rivera v. Medical & Geriatric Administrative Servs., Inc., 254 F. Supp. 2d 237, 240 (D.P.R. 2003) (citing Correa v. Hosp. San Francisco, 69 F.3d 1184, 1190 (1st Cir. 1995). A participating hospital is a hospital "that has entered in to a service agreement with Medicare." Id. (citing 42 U.S.C. § 1395dd(e)(2) (2000); Jackson v. East Bay Hosp., 246 F.3d 1248, 1260 n. 6 (9th Cir. 2001); Medero Diaz v. Grupo de Empresas de Salud, 112 F. Supp. 2d 222, 225 (D.P.R. 2000)). Furthermore, "EMTALA does not provide a cause of action against physicians or physicians' medical corporations." Feliciano Rivera 254 F. Supp. 2d at 240 (D.P.R. 2003) (citing Medero Diaz, 112 F. Supp. 2d at 225 (D.P.R. 2000); Gerber v. Northwest Hosp. Ctr., Inc., 943 F. Supp. 571, 575-76 (D.Md. 1996)).

There are no factual allegations in the complaint suggesting that any defendant other than San Lucas is a "participating hospital" for the purposes of an EMTALA claim. Although only CEP has filed a motion to dismiss plaintiff's EMTALA claim on these grounds, *sua sponte* dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate where "it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile." Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002); Villega-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 92 (D.P.R. 2007) (dismissing *sua sponte* claim where plaintiff claimed no discrimination based on protected category under Title VII). It is clear from the allegations in the complaint that the only defendant subject to liability under EMTALA as a "participating hospital" is San Lucas because all other defendants are individual physicians, physicians' medical corporations, their insurance companies, and the conjugal partnerships of the individual physicians. (See Document 1 ¶¶ 4-16.) Therefore, any EMTALA

6

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

claims against defendants other than San Lucas should be dismissed.

### D. Supplemental Jurisdiction

Dr. Godoy moves to dismiss any state law medical malpractice claims asserted against himself and his conjugal partnership due to a lack of supplemental jurisdiction. (Document 21 ¶¶ 6-8.) Dr. Godoy specifically argues that, based on the allegations in the complaint, there are not enough common factual issues to justify the exercise of supplemental jurisdiction. Id. Title 28, United States Code, Section 1367 provides "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The scope of 28 U.S.C. § 1367 regarding state law claims is illustrated by case law dealing with pendent jurisdiction. See e.g., Orria-Medina 565 F. Supp. 2d at 322-23. "Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case." Id. at 322. The federal and state claims must "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966); Confederación Laborista De Puerto Rico v. Cervecería India, Inc., 607 F.Supp. 1077, 1081 (D.P.R. 1985).

In Gibbs, 383 U.S. at 726, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case involving pendent

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

state-law claims. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.  See Martínez v. Colón, 54 F.3d 980, 990-91 (1st Cir. 1995). The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." Rodríguez v. Doral Mortage Corp, 57 F.3d 1168, 1177 (1st Cir. 1995); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996).

Although the federal claims against Dr. Godoy and CEP should be dismissed, the surviving EMTALA claim against San Lucas provides a jurisdictional basis for the continued application of 28 U.S.C. § 1367. See 28 U.S.C. § 1367(a). Furthermore, plaintiff's surviving EMTALA claim and the medical malpractice claims can fairly be said to "derive from a common nucleus of operative fact." United Mine Workers, 383 U.S. at 725. According to the allegations in the complaint, all of plaintiff's claims derive from Santiago-Roche's medical condition and medical treatment over the relatively short time period from December 24, 2006 to December 30, 2006.

Dr. Godoy highlights the factual allegations that indicate that the EMTALA claim has its basis in events occurring on December 24, 2006 in the emergency room of San Lucas and the medical malpractice claim against Dr. Godoy has its basis in events occurring on December 28, 2006 in the emergency room of Hospital Dr. Pila. (Document 21 ¶ 7.) Indeed there are several incidents within the time line alleged in the complaint, however, all of these incidents relate to Santiago-

Roche's medical condition and her treatment from December 24, 2008 until her death on December 30, 2008. The larger factual background, including the events that form the basis of the EMTALA claim, could be relevant to potential determinations of liability in the medical malpractice claims asserted against all the parties in the complaint. Because the EMTALA and medical malpractice claims revolve around Santiago-Roche's deteriorating health and death, such claims "form part of the same case or controversy" sufficient to justify the exercise of supplemental jurisdiction. See 28 U.S.C. § 1367(a).; See also Hart v. Mazur, 903 F. Supp. 277, 281 (D.R.I. 1995) (exercising supplemental jurisdiction over EMTALA and state law medical malpractice claims spanning two hospital visits and ten days).

### E. State Law Claims

CEP argues that plaintiff has failed to state a claim of medical malpractice against either CEP or Dr. Godoy under Puerto Rico law. (Document 14 at 7.) A medical malpractice claim under Puerto Rico law consists of: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the claimed harm." Torres-Lazarini v. U.S., 523 F.3d 69, 72 (1st Cir. 2008) (quoting Cortes-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 189 (1st Cir. 1997).). Furthermore, Puerto Rico law provides that "[owners] or directors of an establishment or enterprise are...liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties." P.R. LAWS ANN., tit. 31, § 5142.

Specifically regarding the conduct of Dr. Godoy, the complaint alleges:

9

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

> Dr. Godoy departed from the best medical practice while treating [Santiago-Roche]. Dr. Godoy failed to properly evaluate [Santiago-Roche's] medical condition and symptoms, did not conduct available standard medical exams to diagnose and treat her and also failed to consult with the proper specialist. The acts and omissions of Dr. Godoy, deprived [Santiago-Roche] of an opportunity for an early diagnosis and treatment, unnecessarily caused or contributed to her suffering, placed her life in jeopardy and provoked her death.

(Document 1 ¶ 26.) The complaint further alleges that "CEP at all relevant times controlled and operated [Hospital Dr. Pila's] emergency room, and/or recruited and supervised Dr. Godoy" and "CEP failed in supervising Dr. Godoy's medical practice...at the time of the events prompting this complaint." Id. at ¶ 27.

These claims indicate that Dr. Godoy allegedly transgressed a duty (i.e., "the best medical practice") by failing to make use of "standard medical exams" and "the proper specialist" to properly diagnose and treat Santiago-Roche. See id. at ¶ 26. The factual allegations also suggest that CEP transgressed a duty by failing to properly supervise Dr. Godoy and Hospital Dr. Pila's emergency room. See id. at 27. The complaint further indicates that there is a causal nexus between these transgressions and the injuries related to Santiago-Roche's suffering and death. See id. at 26-27. A reasonable inference can also be made from the allegation that CEP "recruited or supervised Dr. Godoy" that CEP has an employment/supervisory relationship that could trigger vicarious liability under Puerto Rico law. Therefore, it appears that the complaint contains sufficient allegations to raise a plausible entitlement to relief with regard to Puerto Rico law medical malpractice claims for direct and vicarious liability against CEP. See Torres-Lazarini, 523 F.3d at 72; P.R. LAWS ANN., tit. 31, § 5142.

**IV.   CONCLUSION**

10

Espada Santiago v. Hospital Episcopal San Lucas, et.al
Civil No. 07-2221 (ADC/MEL)
Report and Recommendation

For the reasons explained above, it is recommended that Dr. Godoy's motion to dismiss, (Document 21), and CEP's motion to dismiss, (Document 14), be GRANTED IN PART AND DENIED IN PART. Specifically, it is recommended that any EMTALA claims against them be DISMISSED. The motions to dismiss should be DENIED in all other respects.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6-7 (1st Cir.1986).

In San Juan, Puerto Rico, this 10th day of February, 2009.

s/Marcos E. López
U.S. MAGISTRATE JUDGE